The next case is number 221824, David A. Field v. Sheet Metal Workers' Nat'l Pension Fund. At this time, would counsel for Appellant Field please introduce themselves on the record to begin? Good morning, Your Honors. My name is Casey Garibrand. I'm here for the plaintiff-slash-appellant David Field. Could you just lower your mic a little bit? I was wondering about that. Thank you. He's a little taller than me.  If I would like to reserve two minutes for rebuttal. You may. Okay. Your Honors, may it please the Court. This is an ERISA case, and we are here today because the fund denied Mr. Field's pension on one basis, then following his appeal changed that basis to include a second new reason for denying his claim. That decision violates ERISA, and it's arbitrary and capricious. The District Court found that that decision was not arbitrary and capricious because Mr. Field had been asked some questions throughout the process and had the chance to answer those questions, but that's not what the regulations require. The fund's initial basis for denying Mr. Field's claim, which was that it found he had engaged in disqualifying work under the plan, was arbitrary and capricious, too, because the fund did not provide a reason. Counsel. Yes. Okay. There are two bases for the denial of benefits. So it would help us if you would start with the disqualification for having engaged in disqualifying employment. Okay. Why is that arbitrary and capricious? Okay. So in the initial denial, the fund listed, I believe, three things that it believed constituted disqualifying work. So jobs in 2008, 10, and then two in 2016. In response to this, Mr. Field submitted a letter and some other information where he explained that as far as the jobs in 2008 and 2010 and the home improvement business related to those, he had reached out and found out that those were conducted by someone else with a similar name. Then he also submitted a note that he had contacted the licensing office and learned that someone else had used his license in 2016 to complete those jobs without his knowledge or consent. As the course of events went on, they asked him additional questions to follow up on that, and he eventually submitted an affidavit from this person, a Mr. Wong, to the effect that he had, in fact, used Mr. Field's. Let's talk about the affidavit. Was it sworn? No. Or was it simply a statement? I think it would be more probable. Was it actually executed? Okay. He termed it an affidavit, Mr. Field did, when he was working on this himself. I think looking at it now, obviously it's not sworn, it's not notarized or anything like that. It would be more properly termed a statement or a declaration than an affidavit, but the phrase that he used to define it was an affidavit. He submitted that, and what this boils down to is they simply didn't believe him. The final denial states that only as far as this issue, that the fund had determined that his inability or refusal to submit additional information was... It's true, isn't it, that they asked for further details about this statement, and rather than providing those details, your client basically said, stop asking. Yes, they did ask him for further details. They did ask him if he had additional contact information for Mr. Kishpailima. I believe that the fund sent one letter to Mr. Kishpailima, but they didn't do anything beyond that. Mr. Field said he didn't know how else to contact this person after the point when he had previously contacted him. So yes, it's true. Did he submit anything from the government entity that gave out the license? He did not. So basically he just had this unsworn statement representing what he says happened, and they said, could you back it up? And he says, no. And then they say, so we don't believe you, and you're saying that's arbitrary. Right. So he submitted this unsworn statement. We'll call it a statement instead of an affidavit for our purposes. He explained that he didn't know how else to get into contact with these people, with this person. He said that he called. There's a statement from him, I believe in the form of a letter, explaining that he had called the licensing body. I'll point out that there's nowhere in the record where the fund contacted the licensing body, which they would have been able to do, and in fact they had done in previous cases contacted licensing bodies to ask questions about Mr. Field. They didn't do that. And they didn't provide a reason, justification, explaining what was wrong with the fact that he couldn't explain. They just said, based on their knowledge of the construction industry, they didn't accept this affidavit. Well, isn't it pretty clear that given what was at stake, that one would think if you really wanted a reliable affidavit, you would have taken the separate steps needed, having it notarized, so you know the signature is an accurate one. And providing information on where the person lives. So I would think a normal look at this would be, gosh, there is a reason to be suspicious about it, and then your client just refuses to answer some basic questions. And to say that they should have done something other than ask him. After all, he's the one who provided it. It doesn't strike me as establishing that what they did was arbitrary and capricious. So what's your response? Well, I'll try to take that in parts, Your Honor. I would respond that as far as whether or not it would have been normal or expected for him to get this notarized in order to confirm the affidavit. For you or I, perhaps, but Mr. Field, the record doesn't speak to this, but perhaps he wasn't aware that for them to consider it to be an official affidavit,  He knew that he might well be denied benefits as to disqualify the employment, and yet he did almost nothing other than a statement suspicious on its face before the board. In response to that, I would draw your attention to the context of this issue as well. So it's not just that they were asking him to provide additional information about this affidavit or this incident in 2016. At the same time, Mr. Field was fielding numerous questions about other things that the fund thought constituted disqualifying employment, numerous other things which he submitted similar types of statements about, either, hey, I called this office and they told me that it was someone else that had conducted this, you know, handwritten explanations. And in each of those instances, those bases were dropped. They were not relied upon. So although the record doesn't say what Mr. Field may or may not have known, I don't think it's difficult to imagine that. Doesn't that tend to show that they were not arbitrary and capricious, that they accepted his evidence when he provided it as to these other aspects of possible disqualifying employment? I would disagree. He submitted similar types of evidence, similar responses in all of these other issues, and they accepted it. But in this case, for this particular issue, they determined that it was insufficient. And to me, that reflects arbitrariness because they were willing to accept the same. Just before you sit down, is there something in the plan or some precedent that supports your view or that you're relying on to show that the refusal to take the word of the claimant based on an unsworn statement that does involve a pretty unusual circumstance that then is not backed up with anything else when asked for constitutes arbitrary and capricious behavior? Not in those specific terms, although I would direct you to the Gannon case that they mentioned in their brief and that we mentioned in our brief as well. In that situation, the court found that it was not arbitrary and capricious for the administrator to rely upon evidence that was contrary to the plaintiff's position, where there was contrary evidence. But in that situation, the administrator had developed five separate pieces of evidence that were contrary to the plaintiff. But you don't have any authority for your position that in the absence of contrary evidence, it's arbitrary and capricious to believe just a say-so statement by the claimant? No, not at this time, Your Honor. So I see that I'm running out of time, but in conclusion, we would just submit that, you know, as to the issue of whether or not he was ever entitled to pension benefits in the first place, that decision was arbitrary and capricious because it was a new argument. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the Sheet Metal Workers Pension Fund please introduce himself on the record to begin? Good morning. Nicholas Christakos for Eppeli Sheet Metal Workers National Pension Fund. May it please the Court. Let me pick up with a few strands of the colloquy that just occurred on the disqualifying employment issue. It's important to remember the claimant who is seeking benefit has the burden of proof. It's also important to remember that the trustees evaluating that claim for benefits have the prerogative and the responsibility to weigh any evidence that's presented. There was a question about what might be in the plan that would bear on all this. Section 8.02 of the plan, which is quoted in its entirety in our brief, is what gives the trustees the ability to ask questions, ask for more information. That's what requires participants to answer those questions truthfully and completely and gives the trustees the prerogative to terminate or deny benefits if they are not satisfied with the answers to those questions. And that's what happened with Quish Polema. So I think there's no conceivable basis for concluding that anything was done that was arbitrary and capricious. Just to button up that point, I take it Gannon isn't directly on all fours because there was contrary evidence and there isn't here. There's the statement that was submitted by Quish Polema, which they weighed and concluded was not credible, which they have the prerogative to do. I just want to repeat what I just said and then you can just answer it. This is not on all fours with Gannon because there was contrary evidence there and there's not here. That's correct. So is there a case supporting the position that you're taking, because it would be helpful for us to know if there is, that it's not arbitrary and capricious to discount this type of evidence in the absence of contrary evidence? I thought we cited cases on the ability to weigh the evidence. There are cases in our brief, Your Honor, yes. I guess the relevant question, though, is why is this not enough? What was put forward here by the claimant such that if you don't have something contrary to it, it's arbitrary to reject it? Is there anything that addresses that type of situation? Well, there are cases where actual sworn affidavits have been submitted and trustees have been held to be within their prerogative to weigh that and conclude that that still wasn't persuasive. In the absence of any contrary evidence? Well, the contrary evidence here is that it just didn't make sense. I mean, these are people who are experienced in the construction industry. The notion, I think it was implicit in Judge Lynch's question, the notion that a field's permit would be used to acquire construction licenses without his knowledge, consent, or any benefit just is inconceivable in this industry. And they kept asking him, can you explain how that happened? How could this happen without your knowledge, consent, and personal involvement? That established a fairly high burden of proof for him to come back and rebut that, which he was not able to do with a questionable end statement. So if there are no further questions on that issue, I would like to address the pension credit issue, which I think got a lot of attention in the briefing. Just to understand, if we found for you on the issue we just discussed, that second issue that you're about to discuss is irrelevant. That's correct. Okay. He loses very independent grounds. But I do want to address it because I think it's important as a precedential matter. There were two grounds cited in the final decision letter. One was the pension credit issue. One was a disqualification, disqualifying employment issue. The pension credit issue was not cited in the original initial staff determination letter because the issue had not been identified by them yet. They looked at the file, got additional information from the Social Security Administration, and realized there's a serious issue as to whether he should have been given a pension in the first place. Did he have adequate pension credit? And in four subsequent communications, immediately after the initial letter, they asked these questions. How is it that you were able to work and have hours and contributions submitted on your behalf after your electrocution incident when you were no longer able to work? Can you explain how the Social Security Administration has no record of you ever having worked for your father's company? Can you submit any other information to prove that you worked for your father's company? They did that in four different communications. Each time the response was, it's not fair to ask me to do that, and the statute of limitations was passed, indicating he clearly was on notice that there was a serious issue as to the original pension credit and that it was being considered by the appeals committee. Although the legal precepts here are pretty clearly set out in the cases that we cite, and in particular in one of the cases I find that the plaintiffs have been relying on, which I think is a bit of a paradox because I think it supports our position. In Niebauer, in Terry v. Bayer, and in the MacArthur case. All of this is in your brief. Between the two issues, you started with the one that is less complex. Do you really think we need to get into the more complex issue to resolve this case? Probably not, but again, I do think the pension fund did the right thing on that issue, so I'd like to at least explain why I think they did the right thing. There is a line of precedent that I think supports it, and I'll be brief. I'll just focus on the MacArthur case, highlighted by the plaintiff. In that case, the facts are somewhat analogous in the sense that the final letter had two different grounds. The initial letter only had one. But the court made clear you look at all the communications in between those two in determining whether they received a full and fair review, determining whether there was substantial compliance with the DOL regulations. That's what happened in our case. That's why the pension credit issue is legitimately on the table. So I do think the facts and the case law do support us on that issue too, should the court decide to address it for the sake of completeness. If there's no other questions, that's all I've got. Thank you. Thank you, counsel. At this time, would the attorney for Field please reintroduce herself on the record? She's got a two-minute rebuttal. May it please the Court. I'm Casey Garibrand here for David Field. Two-minute rebuttal. So I do want to just address a couple of issues very quickly, mainly about the disqualifying employment subject. So the main issue with the determination regarding whether Mr. Field had engaged in disqualifying employment in 2016 and his use by Wong or Wong-Keach-Balema's use of his license is, again, as your honors asked, there was no contrary evidence to. Counsel, actually, your brother said that the custom in the trade was such that it was virtually impossible that his license could have been used without his knowledge and consent. And I do believe that that's in the record. So it's not quite so clear that there is no contrary evidence here. Well, I would disagree. The only evidence supporting whether or not this did happen or did not happen is the statement that Mr. Field submitted by Mr. Keach-Balema. The final denial, what's in the record is the fund's final denial where it states that based on its knowledge of the industry, it – well, we can just read it. Based on its knowledge of the industry, the fund had included or had concluded that there was an adverse inference suggesting that you used your construction supervising license or at the least that it was used with your knowledge or consent. It doesn't explain in depth what that knowledge of the industry is or present evidence explaining what that custom is. Isn't that a fairly standard-issue assumption to make, that the licenses are being used with the consent of the people who hold them? Perhaps that would be a standard-issue decision to make. I think what is not reflected, I guess, in the record is that an explanation of that is the standard or anything along those lines, just that based on their knowledge, they didn't believe that it was. This is the union pension fund for this particular industry. Don't they know the industry? Well, they say they do, yes, Your Honor. Okay. Thank you. Thank you, counsel. That concludes argument in this case.